IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KELLY BROWN,

              Plaintiff,                    Case No.

v.                                     Judge
                                     Magistrate Judge
LANDMARK WORLDWIDE INC. and
VANTO GROUP, INC.                JURY DEMAND

              Defendants
_____/

**COMPLAINT**

Plaintiff, Kelly Brown ("Brown"), worked for Defendants, Landmark Worldwide Inc., ("Landmark") and Vanto Group, Inc. ("Vanto"), Landmark's wholly-owned subsidiary and consulting group, for over three years. Ms. Brown suffers from endometriosis, an ongoing condition, and was under care of a doctor, when she was not provided FMLA paperwork, and eventually terminated. While employed by Vanto, Ms. Brown consistently received good reviews and within a year of her hire was promoted to Sales Manager. Ms. Brown's disability eventually required surgery which was scheduled for May 2020. A few weeks prior to her surgery, Ms. Brown experienced a flare-up requiring her to go on leave early, for which she used her vacation time. Ms. Brown's doctor cleared her to return to work approximately two and a half months later. While on leave, Vanto removed Ms. Brown from her team's messaging conversations. When Ms. Brown contacted Vanto to inform them she had been cleared to return to work, Vanto notified her it made changes to her role. All of her management duties were transferred to her male colleague, she would be demoted to Sales Consultant, her salary would be reduced, she would no longer receive commissions, and she would no longer report to Vanto's CEO but her male colleague. Further,

1

Ms. Brown's sales goals were set 500% of what other members of the sales team were required to meet. Ms. Brown repeatedly complained to Human Resources that she was being discriminated against on the basis of her sex and her disability. Ms. Brown was the only executive level employee whose duties had be limited or transferred and received a pay cut. Additionally, during this time, Ms. Brown communicated to Human Resources that her physician diagnosed her with anxiety. After, Vanto continued its discrimination against Ms. Brown, she filed an EEOC charge alleging sex and disability discrimination. Within two weeks of filing the Charge, Vanto terminated Ms. Brown. Vanto interfered with Ms. Brown's ability to receive FMLA, discriminated against her on the basis of her gender and disability, and further retaliated against her as a result of her complaints. Accordingly, Ms. Brown files the instant Complaint for violations of the FMLA, ADA, TDA, Title VII, and the THRA.

## PARTIES

1.  Plaintiff, Ms. Kelly Brown, is a citizen and resident of Franklin, Williamson County, Tennessee and a former employee of Defendant. Plaintiff worked for Defendants in Franklin, Williamson County, Tennessee from her residence.

2.  Landmark Worldwide Inc. ("Landmark") is a foreign corporation formed in Delaware with a principal address in San Francisco, California, licensed to operate in Tennessee. Its registered agent for service of process is Corporation Service Company, 2908 Poston Ave, Nashville, TN 37203-1312.

3.  Vanto Group, Inc. ("Vanto") is a wholly-owned management consulting subsidiary of Landmark.

4.  At all material times, Defendants, Landmark and Vanto, have been employers as defined by the ADAAA, FMLA, Title VII, and under state law.

5.     At all times material to this action, based on information and belief, Defendant Vanto and Defendant Landmark employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2019 and/or 2020 and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

6.     At all times material to this action, Plaintiff Brown was an "eligible employee" under the FMLA pursuant to 29 U.S.C. § 2611(2), and 29 C.F.R. § 825.110.

7.     At all times material to this action, Defendant Vanto's San Francisco office served as Defendant's "worksite" under the FMLA pursuant to 29 C.F.R. § 825.111.

## JURISDICTION AND VENUE

8.     This is an action for unlawful employment practices brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") (Count I); the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.,* as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count II); the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Count III); discrimination on the basis of sex in violation of the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.* ("THRA") (Count IV) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *e. seq.*  (Count V).

9.     The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

10.    Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq,* to wit: a charge of discrimination against both Vanto and Landmark was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice. The EEOC issued Plaintiff a Notice of Right to Sue and this action was commenced within 90 days of receipt of the EEOC's Notice of Right to Sue.

## FACTS

11.     Plaintiff, Kelly Brown, worked for Defendants, Vanto and Landmark, for over three years. Ms. Brown was first hired as a Sales Consultant in April 2017. Within a year, Vanto promoted her to Sales Manager. She was employed continuously until she was terminated on August 17, 2020.

12.     Ms. Brown worked remotely at all relevant times, from her residence in Franklin, Tennessee.

13.     Defendants Vanto and Landmark are for-profit corporations. Landmark is "an international personal and professional growth, training, and development company." Vanto is a global business consulting firm.

14.     Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(h)(1).

15.     Plaintiff was qualified for her job with Defendants and performed her job duties in a competent and satisfactory manner.

16.     Ms. Brown was scheduled for surgery on May 8, 2020 to treat her endometriosis.

17.     At all times, Ms. Brown's supervisors were aware of her surgery, her endometriosis diagnosis, and that the surgery would only mitigate her side effects.

18.     Defendants never spoke to Ms. Brown about FMLA leave nor did it provide Ms. Brown any FMLA paperwork to be completed by her physician.

19.     On April 13, prior to her surgery, Ms. Brown experienced a flare-up of her condition.

20.     She contacted Human Resources for Landmark who informed her to take her short-term disability early. As a result, Ms. Brown used her remaining vacation time to cover her days off until her short-term disability could begin.

4

21.	While on leave, Vanto removed Ms. Brown from all messaging forums used by her sales team and transferred her duties to her male colleague.

22.	On or around June 29, Ms. Brown texted Olga Loffredi, Chief Executive Officer of Vanto, Gerald Pinero, Chief Operations Officer ("COO") of Vanto, and Ruy Castelan, Design and Development Manager of Vanto, to inform them her physician has cleared her to return to work on July 6.

23.	Ms. Brown was informed changes had been made, which included the indefinite transfer of all of her management duties to Mr. Castelan, her male colleague.

24.	Further, she would return as a member of the sales team, instead of as a member of management, despite having no leads or contacts, her salary would be reduced by ten percent, and she would no longer receive any commissions.

25.	No other executive employees or employees of Ms. Brown's status were demoted or received reductions in their salary.

26.	Ms. Brown informed Ms. Loffredi, Mr. Pinero, and Mr. Castelan that she was not "aligned" with these changes.

27.	"Aligned" is company terminology to indicate an employee agrees with the proposed course of action.

28.	Mr. Pinero told Ms. Brown they would discuss the details on Wednesday, July 1. During this conversation, Ms. Brown inquired as to 10% commission of the sales team revenue she received as the Sales Manager. Mr. Castelan informed her she would not longer receive that commission, nor would she receive the commission on sales that were already in the pipeline assigned to other sales team members which she helped cultivate.

5

29.     Ms. Brown told Mr. Pinero this was a demotion and again reiterated that she was not "aligned."

30.     Ms. Brown had multiple conversations with Mr. Castelan and Mr. Pinero during which she communicated that this was a demotion, and she was not aligned with Vanto's change in her position. After which, Mr. Pinero requested Ms. Brown put her requests in writing.

31.     On July 13, Ms. Brown emailed Mr. Pinero to request her salary not be decreased, that she retain her duties as sales manager and continue to support the sales team who would report to her, that she retain certain commissions for deals which she supported to close, as well as inquired as to how to structure the leads she would receive.

32.     On July 17, Mr. Pinero, responded to Ms. Brown's requests stating Vanto would maintain her current pay rate for only three months, however, he stated Vanto would not honor her commissions and her request to work with the team as their supervisor would not be allowed.

33.     This same day, Ms. Brown responded and requested that her pay should not change for six months to allow her to build a sales pipeline.

34.     During this phone call, Ms. Brown informed Ms. Loffredi, the COO, and Mr. Pinero that she was not comfortable with these changes. Ms. Brown was informed that she could not be returned to work until she was "complete," meaning she agreed to the changes in her job responsibilities and pay.

35.     On or around July 21, Ms. Brown contacted Melanie Riley, Head of Human Resources. During this five-minute call, Ms. Brown informed Ms. Riley of the ongoing issues with her return to work and stated that these changes to her role were a clear demotion and discrimination due to her disability and her FMLA leave status.

6

36.     On July 22, Ms. Brown had a lengthy phone call with Ms. Riley, to inform her of the full situation with regards to her demotion and the discrimination she was experiencing. In this conversation, Ms. Brown informed Ms. Riley of her demotion, the transfer of her supervisory duties to her male colleague, that she would have to request leads from the same male colleague, the denial of her commission, and the reduction of her overall salary. Ms. Brown also expressed that this was discrimination and retaliation on the basis of her disability as well as her sex, retaliation for her protected leave, and that Vanto was forcing her to accept the demotion, as otherwise she would not be returned to work.

37.     On July 23, Ms. Brown emailed Ms. Riley the following:

     "I believe this demotion to be discrimination and retaliation due to my disability . . . this is sex discrimination . . . my role and job duties were given to Ruy . . .formerly my colleague and peer."

38.     On July 24, Ms. Brown again spoke with Ms. Riley, who informed her that she was not being discriminated against and that Ms. Brown is a "highly valued" employee and regarded as "the next executive of the company" and that she is being "sidestepped" now to potentially allow for a promotion later. Ms. Riley then stated that Ms. Brown has the choice if this is resolvable as Ms. Brown seemed adversarial.

39.     Ms. Brown found Vanto's actions to be discriminatory and hostile, and continued to regularly attempt to communicate with Defendant. Ms. Brown communicated that she had been demoted after returning to from her medical leave she was demoted from Sales Manager, her supervisory duties were given to her male colleague, and her salary and commission would be reduced. Ms. Brown again agreed to another phone call with Ms. Riley, Ms. Loffredi, and Mr. Pinero.

40. On July 27, Ms. Brown met with Ms. Loffredi and Ms. Riley, in which they discussed Ms. Brown's new role. This role still did not include any supervisory functions nor her commissions, and she still reported to her male colleague.

41. During this time, in which Ms. Brown complained of discrimination and continued to engage in conversations regarding her role with Vanto, leads were taken from the pipeline and given to other sales employees.

42. On July 28, Ms. Brown again spoke with Ms. Loffredi and Ms. Riley to discuss her role in which Ms. Loffredi regularly stated, this was about Ms. Brown being "complete" before she could be returned to work. To be complete, Ms. Brown would have to agree that she was not being discriminated against and that Vanto was not demoting her.

43. On July 30, as a result of her ongoing discrimination from Vanto, Ms. Brown's doctor diagnosed her with anxiety, for which she was prescribed medication. Ms. Brown informed Ms. Riley of her diagnosis.

44. On July 31, Ms. Brown had another phone call with Ms. Loffredi, Ms. Riley, and Mr. Pinero. During this call, Ms. Brown felt forced to state that she was "complete" in order to retain her job, as Vanto had made it clear she could not be returned to work until she stated she was complete.

45. Soon after, Ms. Brown was added to the sales team "report list" reflecting the individual sales team statuses. Ms. Brown's reflected she was "behind."

46. During subsequent Global Team calls, management informed employees that Vanto had the same revenue and business challenges as prior to COVID-19, and that COVID-19 had not negatively affected them.

47.     On August 5, Ms. Brown communicated to Mr. Castelan that she had expressed to Ms. Riley that she did not agree that she was not discriminated against due to her disability and gender.

48.     Ms. Brown also emailed Ms. Riley to indicate that she still feels she was demoted and discriminated against due to her disability and gender and it was clear on the prior phone call that if she did not state she was "complete" she would be terminated. Further, Ms. Brown indicated that she was being set up to fail and retaliated against as the majority of the leads she received do not meet Vanto's minimum qualifications criteria.

49.     This same day, Ms. Brown filed a EEOC Charge alleging discrimination on the basis of sex and disability.

50.     On August 7, Ms. Brown emailed Ms. Riley to notify her of continued discrimination she experienced, including not receiving leads in an equitable way compared with other employees and being treated poorly as compared to similarly situated employees who were not disabled and had not taken leave.

51.     On August 10, a Vanto employee informed Ms. Brown that Mr. Castelan had refused the employee's request that Ms. Brown provide support for her sale.

52.     On August 11, Vanto required that Ms. Brown read her job description to the sales team. During this meeting, team members were informed that she would assist them in the sales but would not receive split commissions as required by the policy.

53.     Later that day, during a call with Ms. Loffredi and Mr. Pinero, Ms. Brown expressed her concern that her assigned revenue goals were unattainable and that leads were not being transferred to her appropriately.

54.     After these conversations, Mr. Castelan continued to take leads from Ms. Brown and reassign them to other members of the team.

55.     On August 17, 2020, Vanto notified Ms. Brown that she was a part of a layoff of the entire sales team due to COVID-19, effective immediately.

56.     On information and belief, the entire sales team was not laid off.  Two male employees of the sales team were not terminated, and the male employee they had promoted to take over Ms. Brown's sales manager position after her medical leave, was not terminated.

57.     On September 28, Ms. Brown filed a second EEOC charge against Defendants alleging retaliation and that her lay-off was a pretext for discrimination and retaliation.

### Count I
### Violation of FMLA- Interference/Retaliation

58.     Plaintiff restates and incorporates herein the foregoing paragraphs.

59.     Defendant interfered with Plaintiff's FMLA rights.

60.     At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

61.     Defendant Vanto is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

62.     Defendant Vanto's San Francisco office serves as Ms. Brown's "worksite" under 29 C.F.R. § 825.111.

63.     Defendant interfered with Plaintiff's FMLA when, after Plaintiff asked about medical leave and short-term disability benefits, they did not provide her with paperwork or any information, despite her FMLA eligibility.

64.     Defendant  retaliated against Plaintiff when she took leave for a serious health condition.

10

65. Defendant's actions constitute interference and/or retaliation violations of the FMLA.

66. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

67. Defendants' conduct harmed and caused damage to Plaintiff.

68. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### Count II
### Violation of ADAAA- Disability Discrimination/Retaliation

69. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

70. Plaintiff was a qualified individual with a disability.

71. Defendant discriminated and retaliated against Plaintiff on the basis of her disability in violation of the ADAAA that culminated in her discharge.

72. Defendant was aware of Plaintiff's disability and upon her notification of her return to work status, she was demoted, stripped of her supervisory duties, informed her salary would be reduced, and she would no longer receive commission.

73. Plaintiff complained repeatedly to Human Resources of her discrimination, Defendant did not conduct an investigation and Defendant refused to allow Plaintiff to return to work until she stated she was "complete," requiring her to retract her discrimination complaints.

74. Defendant retaliated against Plaintiff when it terminated her after she engaged in protected conduct when made complaints to Human Resources and filed a charge of discrimination with the EEOC due to her disability.

75. Plaintiff's discharge was because of her disability.

11

76.     Plaintiff was retaliated against due to her disability.

77.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional and physical pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

78.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count III**
**Violation of TDA- Disability Discrimination/Retaliation**

79.     Plaintiff restates and incorporates herein the foregoing paragraphs.

80.     Plaintiff was a qualified individual with a disability.

81.     Plaintiff was discriminated against due to her disability.

82.     Plaintiff was subjected to an adverse employment action because of her disability.

83.     Plaintiff was discriminated against by Defendant who terminated her due to her disability.

84.     Plaintiff was retaliated against by Defendant who terminated her after she engaged in protected conduct by complaining about discrimination.

85.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain and physical pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

12

86.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

**Count IV**
**THRA - Sex Discrimination/Retaliation**

1.   Plaintiff restates and incorporates herein the foregoing paragraphs.

2.     Plaintiff was subject to disparate terms and conditions of employment that other similarly situated males were not subjected to.

3.     Under the THRA, employers may not discriminate against employees based on sex.

4.     Upon Plaintiff's return from medical leave her supervisory duties were indefinitely transferred to her male colleague, who Plaintiff was then required to report to.

87.     Plaintiff engaged in protect conduct when she objected to and protested sex discrimination to Human Resources. Such actions by the Plaintiff are statutorily protected activities under the Tennessee Human Rights Act.

88.     In violation of the THRA, Defendant retaliated against Plaintiff by engaging in an ongoing pattern of retaliation including transferring her leads to other employees, requiring her to report to her male colleague, removing her leads to former subordinate employees and terminating her after she engaged in protected conduct.

5.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

**Count V**
**Title VII - Sex Discrimination/Retaliation**

6.   Plaintiff restates and incorporates herein the foregoing paragraphs.

13

7.     Plaintiff was subject to disparate terms and conditions of employment that other similarly situated males were not subject to.

8.     Under Title VII employers may not discriminate against employees based on sex.

9.     Upon Plaintiff's return from medical leave her supervisory duties were indefinitely transferred to her male colleague, who Plaintiff was then required to report to.

89.     Plaintiff engaged in protect conduct when she objected to and protested sex discrimination to Human Resources. Such actions by the Plaintiff are statutorily protected activities under Title VII.

90.     In violation of the Title VII, Defendant retaliated against Plaintiff by engaging in an ongoing pattern of retaliation including transferring her leads to other employees, requiring her to report to her male colleague, removing her leads to former subordinate employees and terminating her after she engaged in protected conduct.

10.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

**RELIEF REQUESTED**

Plaintiff respectfully requests:

1.     A jury trial;

2.     Back pay and damages for lost benefits;

3.     Reinstatement or front pay;

4.     Damages for physical pain, embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

14

5.      Punitive damages, where appropriate;

6.      Liquidated damages under the FMLA;

7.      Attorneys' fees and expenses;

8.      Prejudgment interest and, if applicable, post-judgment interest; and

9.      Such other and further legal or equitable relief to which she may be entitled under the FMLA, ADAAA, TDA, the THRA, and Title VII, including a declaration that Defendant violated her civil rights and training for Defendant's managers so that they will not continue to discriminate against other employees because of their disability.

Respectfully submitted,

*/s Anne Bennett Hunter*
Heather Moore Collins BPR # 026099
Anne Bennett Hunter BPR # 022407
Ashley Shoemaker Walter BPR# 037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*

15